EXHIBIT INDEX

Washington Shoe Company
**WSC v Academy LTD**

| Index No. | Exhibit |
| --- | --- |
| A | United States Copyright Registration No. VAu757-022 Magic Carpet with Deposits |
| B | Photographs of Magic Carpet Boots That Academy Has Sold, Displayed or Distributed, Unauthorized Copies of WSC's Copyrighted Work |
| C | Letter Dated June 3, 2010, WSC notified Academy of the act of infringement – Magic Carpet Boots |
| D | WSC's Original Material – Artwork Depicting the Zebra Striped Pattern |
| E | WSC's No. VAu 1-007-893 and Corrected United States Copyright Registration No. VA 1-432-334 |
| F | Photographs of Zebra Boots That Academy Has Sold, Displayed or Distributed, Unauthorized Copies of WSC's Copyrighted Work |
| G | Letter Dated October 6, 2010, WSC notified Academy of the act of infringement – Zebra Supreme Boots |

**End**

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

Marybeth Peters

Register of Copyrights, United States of America



**FORM VA**
For a Work of the Visual Arts

VAu 757-022

EFFECTIVE DATE OF REGISTRATION

8 / 9 / 2007
Month / Day / Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**Title of This Work** ▼
Magic Carpet

**NATURE OF THIS WORK** ▼ See instructions
Artwork design applied to useful articles

**Previous or Alternative Titles** ▼
N/A

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work** ▼
N/A

If published in a periodical or serial give: **Volume** ▼ **Number** ▼ **Issue Date** ▼ **On Pages** ▼

**NAME OF AUTHOR** ▼
Washington Shoe Company

**DATES OF BIRTH AND DEATH**
Year Born ▼ Year Died ▼

**Was this contribution to the work a "work made for hire"?**
✓ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ______ / Domiciled in ______

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ✓ No
Pseudonymous? ☐ Yes ✓ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate box(es). **See instructions**
☐ 3-Dimensional sculpture ☐ Map ☐ Technical drawing
✓ 2-Dimensional artwork ☐ Photograph ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**Name of Author** ▼

**Dates of Birth and Death**
Year Born ▼ Year Died ▼

**Was this contribution to the work a "work made for hire"?**
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ______ / Domiciled in ______

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate box(es). **See instructions**
☐ 3-Dimensional sculpture ☐ Map ☐ Technical drawing
☐ 2-Dimensional artwork ☐ Photograph ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

**Year in Which Creation of This Work Was Completed**
2007 Year
This information must be given in all cases.

**Date and Nation of First Publication of This Particular Work**
Complete this information ONLY if this work has been published.
Month ______ Day ______ Year ______ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Washington Shoe Company
21001 72nd Ave S
Kent, WA 98032

See instructions before completing this space.

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE / OFFICE USE ONLY
APPLICATION RECEIVED 08/09/07
ONE DEPOSIT RECEIVED 09/01/09
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page. • See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE

EXAMINED BY KSG

FORM VA

CHECKED BY

CORRESPONDENCE Yes

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

Yes ✓ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. This is the first published edition of a work previously registered in unpublished form.

b. This is the first application submitted by this author as copyright claimant.

c. This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼ Year of Registration ▼

DERIVATIVE WORK OR COMPILATION Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

No

See instructions before completing this space.

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

N/A

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼ Account Number ▼

N/A

CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Robert Moehring
21001 72nd Ave S
Kent, WA 98032

Area code and daytime telephone number (253) 234-3000 Fax number (253) 234-3001

Email rob@washingtonshoe.com

CERTIFICATION* I, the undersigned, hereby certify that I am the

check only one ▶

- author
- other copyright claimant
- owner of exclusive right(s)
- ✓ authorized agent of Washington Shoe Company

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Robert Moehring Date 6/13/07

Handwritten signature (X) ▼

X [signature]

Certificate will be mailed in window envelope to this address:

Name ▼
Robert Moehring

Number/Street/Apt ▼
21001 72nd Ave S

City/State/ZIP ▼
Kent, WA 98032

YOU MUST:
- Complete all necessary spaces
- Sign your application in space 8

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

Fees are subject to change. For current fees, check the Copyright Office website at www.copyright.gov, write the Copyright Office, or call (202) 707-3000.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

## Washington Shoe Company

Product designs and trademarks belong exclusively to Washington Shoe Company, and are protected from copying and simulation under national and international trademark, copyright laws and treaties throughout the world.

| Style Details | | |
|---|---|---|
| Style Name | Magic Carpet | |
| Color | Deep Sea | |
| Gender | Womens | |
| Sample Request Date | 3/24/2010 | |
| Creation Date | 4/4/2006 | |
| ID | FENN | |
| **Construction Details** | | FTY |
| Construction | GEN-CO-04 | |
| Last | GEN-LA-05 | |
| Outsole | GEN-OS-01 | |
| Finish | Shiny | |
| Heel Label | None | |
| Flocking | GEN-FL-01 | |
| Outsole Size Label | GEN-OL-01 | |
| Hardware, Finish | Shiny Silver | |
| Lining Print Color | Standard White | |
| Insole Mold | GEN-IM-01 | |
| Insole Color | Standard White | |
| Insole Logo Print | None | |
| Special Instructions | | |



**Washington Shoe Company**

Product designs and trademarks belong exclusively to Washington Shoe Company, and are protected from copying and simulation under national and international trademark, copyright laws and treaties throughout the world.

| Style Details | | |
|---|---|---|
| Style Name | Magic Carpet | |
| Color | Deep Sea | |
| Gender | Womens | |
| Sample Request Date | 3/24/2010 | |
| Creation Date | 4/4/2006 | |
| ID | FENN | |
| Construction Details | | FTY |
| Construction | GEN-CO-04 | |
| Last | GEN-LA-05 | |
| Outsole | GEN-OS-01 | |
| Finish | Shiny | |
| Heel Label | None | |
| Flocking | GEN-FL-01 | |
| Outsole Size Label | GEN-OL-01 | |
| Hardware, Finish | Shiny Silver | |
| Lining Print Color | Standard White | |
| Insole Mold | GEN-IM-01 | |
| Insole Color | Standard White | |
| Insole Logo Print | None | |
| Special Instructions | | |

| Color: Lining+Insole | Color: Trim+Outsole | Color: Artwork |
|---|---|---|
| STANDARD WHITE | 5255 C | 5255 C |
| | | 5483 C |
| | | 302 C |
| | | 234 C |
| | | 2622 C |





Ruby

Emerald

# EXHIBIT B


Academy
$19.99




STONE CREEK





# EXHIBIT C

mccormack
Intellectual Property Law
Business Law PS
617 Lee Street
Seattle, WA 98109 USA
p.206.381.8888 / f.206.381.1988
tim@McCormackLegal.com

**Timothy B. McCormack**
***Attorney at Law***

**June 3, 2010**

*Via U.S. Mail, Facsimile and Email*

Susan J. Hightower
Pirkey Barber LLP
600 Congress Ave., Ste. 2120
Austin, TX 78701

T: (512) 482-5225
F: (512) 322-5201
E: shightower@pirkeybarber.com

**RE: Our Client: Washington Shoe Company**
**Your Client: Academy Sports Outdoors**

**MAGIC CARPET BOOTS**

Dear Ms. Hightower:

As you know, my firm represents the Washington Shoe Company, a Washington corporation (Washington Shoe). Washington Shoe created, manufactures, and sells several lines of its famous boots. My client's company has been in business for *over one-hundred years.* This letter is directed at the MAGIC CARPET BOOTS.

The boot designs are copyrighted. **You have no right to make use or sell these boots to anyone.**

I have reviewed pictures of your client's infringing boots ("infringing boots"). Your client's infringing boots are clearly illegal knock-offs. We demand that your client immediately CEASE AND DESIST all further sales of these infringing boots and of all Washington Shoe's copyrighted boots. We also DEMAND an accounting of all past sales.






In addition to the infringement of my client's intellectual property, you are hereby advised that your client is in violation of the Settlement and Release Agreement dated September 26, 2008, between our respective clients. As you will recall, your client entered into a settlement agreement for previous infringements. In agreeing to release your client from all claims related to the initial infringement, my client was assured that your client would not make any further unauthorized use of my client's intellectual property.

Specifically, the agreement states, "[t]he parties expressly agree that this release is not and shall not be interpreted as a license for any ongoing or future use by Academy of intellectual property owned by WSC. WSC reserves its rights under law to bring legal action for use of the intellectual property in any manner other than the Released Use, for any unauthorized use of intellectual property for any infringement occurring after the date of this Agreement." In displaying and selling Washington Shoe's copyrighted Magic Carpet Boot design your client is infringing my client's rights and is effectively in breach of the Settlement and Release Agreement entered on or about September 26, 2008.

Pictures of the new infringing boots are shown below.



My client's boots are also protected by trademark and the shape, configuration and packaging are well established in the minds of U.S. consumers as being Washington Shoe products. Washington Shoe will seek legal remedies and injunctions against any company that copies its intellectual property.

## YOUR CLIENT HAS COMMITTED COPYRIGHT INFRINGEMENT

To establish a claim of copyright infringement, Washington Shoe only needs to show that your client used, copied or displayed the boots without authorization. Washington Shoe does not need to prove that your client acted knowingly or intentionally.

Your client has been provided with information regarding the copyright infringement (copying and displaying and selling the boots). This means that your client's company, officers,






and other individuals involved in the infringement can be liable for damages. As explained below, even if a third party provided your client with samples, your client and others can remain liable for copyright infringement damages.

**YOUR CLIENT'S COMPANY IS LIABLE FOR COPYRIGHT INFRINGEMENT EVEN IF OTHERS ARE ALSO LIABLE**

Your client's company is liable for the copyright infringement noted above. In civil legal actions, if a wrong is committed, damages may be awarded. Simply owning the company selling the copyrighted boots creates liability for the company.

Two or more people can be liable for the same act or acts of copyright infringement. This is called "joint liability." If parties have joint liability, then they are each liable up to the full amount of the relevant obligation. Accordingly, one, or the other, or both, infringers can be sued for the full amount. Here are some examples where two or more people had some form of joint liability.

- **Corporation's President Jointly Liable For Copyright Infringement.** Corporation's president was personally and jointly liable for copyright infringement occurring when corporation published CD-ROM disk containing copyrighted photographs.

- **Owner of Website Jointly Liable For Copyright Infringement Posted by Third Parties.** Owner of website, infringed copyrights by distributing copyrighted photographs, even if website operator did not know that the photographs had been uploaded onto website.

- **Owners of Website, i.e., Website Jointly Liable For Copyright Infringement Posted by Third Parties.** Operators of website that contained unauthorized copyrighted images vicariously liable for copyright infringement.

Said another way, your client's company is a direct infringer because the boots are being displayed and sold by your client's company. This makes the company liable. If the company received samples from a third party, that person or company would also be a direct infringer. In most cases personal liability also extends to the people running the company based on contributory and vicarious liability, as illustrated above.

The artwork, design and configuration of my client's boots are specifically protected under the United States copyright statute. *See, e.g.,* 17 U.S.C. § 101 et seq. (2007).

The damages offered by the copyright statute for the type of infringing activities that your client is engaging in range from $30,000 to $150,000 per infringement. 17 U.S.C. § 504 (2005) ("award of statutory damages to a sum of not more than $150,000 [per infringement]").






Your client's violation of my client's rights will likely result in a large award of statutory damages. Your client was placed on notice of my client's intellectual property rights during the first instance of infringement by your client and therefore, any infringement occurring after said notice will likely be considered willful and result in a substantial statutory award.

**TRADEMARK INFRINGEMENT**

My client's boots also carry substantial trademark protection under both state and federal law. Your client's use of a confusingly similar boots and designs (the exact same) constitutes trademark infringement and/or dilution. My client's damages will be enhanced. *See, e.g.,* 15 U.S.C. §§ 1051 *et. seq.* (2005); Rev. Code Wash. § 19.77.160 (2005). The product configurations of each of my client's boots, such as the color banded tops and bottoms and other product identifiers are also subject to trademark protection.

**TRADE DRESS INFRINGEMENT**

Your client's infringing boots also violate my client's trade dress rights, including the boots' features, size, shape, color or color combinations, graphics, and sales techniques (such as the novelty of boots themselves), we offer the following authority to support our position.

Trade dress involves the total image of a product and may include such features as the size, shape, color or color combinations, graphics, or even sales techniques. In fact, "[t]rade dress can include the marketing techniques used by the parties and the manner in which the product is sold or marketed." Gregory J. Battersby, *Law of Merchandise and Character Licensing* § 12:23 (2003); *See also, e.g., Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 212 USPQ 904 (5th Cir. 1981); *Sun-Fun Prods., Inc. v. Suntan Research & Dev., Inc.*, 656 F.2d 186, 213 USPQ 91 (5th Cir. 1981); *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 205 USPQ 297 (2d Cir. 1980), cert. denied, 459 U.S. 832 (1982); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 215 USPQ 745 (11th Cir. 1982) (finding that the adoption papers which are included in the Cabbage Patch dolls can constitute trade dress).

In *Original Appalachian Artworks,* for example, the court held that the use of adoption papers and birth certificates accompanying the sale of CABBAGE PATCH dolls qualified as protectable trade dress since they fell within the broadly protectable concept of marketing techniques. The court found that both plaintiff's and defendant's products were the same soft-sculptured baby dolls and were sold in similar retail establishments to a practically identical clientele. Plaintiff was even able to demonstrate actual confusion, which, as the court recognized, is the best evidence of likelihood of confusion.






In addition, many courts have recently recognized that the design, or configuration, of a product itself can constitute protectable trade dress within the meaning of the Lanham Act, Section 43(a). *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 211 USPQ 1017 (2d Cir. 1981) (involving the distinctive color and symbols used on the GENERAL LEE automobile appearing in the "Dukes of Hazzard" television series); *Harlequin Enters., Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 210 USPQ 1 (2d Cir. 1981) (involving distinctive book covers); *Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 191 USPQ 79 (8th Cir.), cert. denied, 429 U.S. 861, 191 USPQ 588 (1976) (involving the shape of a twin hopper bottomed grain semi-trailer); *Sturm Ruger & Co. v. Arcadia Mach. & Tool, Inc.*, 10 USPQ2d 1522 (C.D. Cal. 1988) (involving design of handgun); *PAF S.r.l. v. Lisa Lighting Co.*, 712 F. Supp. 394, 12 USPQ2d 1161 (S.D.N.Y. 1989) (involving design of desk lamp); *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551 (N.D. Cal. 1988) (involving design of knee pads used in skateboarding); In re Honeywell, 8 USPQ2d 1600 (TTAB 1988) (involving round shape of thermostat).

**CONCLUSION**

In order to resolve this matter, provide Washington Shoe with the Following:

1. A list of show models which have been sold, are currently on order, in transit, or in inventory, which have designs similar to the infringing boots ("similar style boots).
2. A written undertaking that your client has ceased to import, sell, and offer to sell all of the infringing boots and similar style boots (collectively, "infringing boots").
3. The total number of the infringing boots that your client has sold;
4. The total number of infringing boots that your client has in inventory;
5. The total number of infringing boots that your client has on order or in transit;
6. The retail selling price of the infringing boots;
7. The cost to your client of the infringing boots;
8. The identity and correspondence address of any and all intermediaries between the manufacturer and your company of the infringing boots; and
9. The identity and correspondence address of the manufacturer of the infringing boots.






After we have received the above information and undertaking, we will then be able to discuss resolution of this matter.

Let me know your decision within ten days of receiving this letter.

Sincerely,
MCCORMACK INTELLECTUAL PROPERTY LAW
BUSINESS LAW PS

Timothy B. McCormack
*tim@McCormackLegal.com*

cc: Washington Shoe Company